**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>STROMA MEDICAL CORPORATION,<br><br>Debtor.[1] | Chapter 11<br>Subchapter V<br><br>Case No.  25-12169 |

**DECLARATION OF GREGG HOMER IN**
**SUPPORT OF PETITION AND FIRST DAY RELIEF**

I, Gregg Homer, hereby declare as follows:

1. I am the Executive Chairman of Stroma Medical Corporation (the "Debtor"). I founded the Debtor and have served in various leadership roles since its inception.

2. I am generally familiar with the Debtor's financial affairs and books and records.

3. Except as otherwise indicated, the statements set forth in this First Day Declaration are based upon my personal knowledge of the Debtor's books and records, information I learned from my review of relevant documents, or my own opinion based on my knowledge, experience, and information concerning the Debtor's financial condition. I am authorized to submit this declaration on behalf of the Debtor. If called to testify, I could and would testify competently to the matters set forth in this First Day Declaration.

---

[1] The Debtor in this Subchapter V Case, along with the last four digits of its federal tax identification number is as follows:  Stroma Medical Corporation (8755). The Debtor's mailing address is 30 Hughes, Suite 206, Irvine, California 92618.

4.  On November 21, 2025, the Debtor initiated a solicitation process to vote on the *Debtor's Prepackaged Subchapter V Plan of Reorganization* (the "Plan"),[2] filed contemporaneously herewith, pursuant to Bankruptcy Code section 1125(g).

5.  On December 8, 2025 (the "Petition Date"), the Debtor filed a voluntary petition commencing this chapter 11 case (the "Chapter 11 Case"). The Debtor is eligible, and has elected, to proceed under Subchapter V of title 11 of the United States Code (the "Bankruptcy Code").

6.  The Debtor has filed various motions identified herein requesting "first day" relief. I submit this First Day Declaration in support of such first day relief, as well as to provide support for, and background concerning, the Chapter 11 Case and other pleadings filed or expected to be filed in the Chapter 11 Case.

## I.  OVERVIEW OF THE DEBTOR'S BUSINESS AND CURRENT STATE OF FINANCIAL AFFAIRS

### A.  The Debtor's Business

7.  Founded on April 9, 2009, Stroma Medical Corporation is a Delaware corporation. The Debtor is governed by its Board of Directors.

8.  At the time of filing, Dr. Afshin Nadershahi serves as Chief Executive Officer and has served in that capacity since May 9, 2022. I serve as Executive Chairman and Chief Science Officer. No changes to the Debtor's senior management are contemplated under the Plan.

9.  Stroma develops proprietary ophthalmic laser systems designed to selectively treat iris stromal tissue. The technology platform includes hardware, firmware, software modules, and clinical protocols.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan or Solicitation Materials, as applicable.

10. Since inception, the Debtor has raised approximately $70 million in investment capital through multiple preferred equity, note, and strategic investment rounds to fund research, engineering, and pre-clinical development.

11. The Debtor has conducted preclinical testing and limited pilot studies outside the United States and is preparing for a pivotal clinical study anticipated in Germany in 2026.

12. The Debtor is a pre-commercial, R&D-stage medical device company. Revenues have historically derived from private investment, not product sales.

B. **The Debtor's Capital Structure**

13. There are approximately 50,408,437 issued shares of Stroma Medical Corporation stock, consisting of 10,937,334 shares of Common Stock and 39,471,103 shares of Series B Preferred Stock. All shares of Series A Preferred Stock have been redeemed.

14. As of the Petition Date, the Debtor's assets total approximately $5.86 million, consisting primarily of cash and deposits, intellectual property, and equipment and miscellaneous assets.

15. As of the Petition, the Debtor has no secured creditors.

16. The Debtor has approximately $2.98 million in unsecured debt, consisting mostly of trade vendor, professional fees, and a disputed, contingent, and unliquidated judgement claim.

17. The Debtor has one non-residential, real property lease for its office space located in Irvine, California.

II. **EVENTS LEADING TO FILING THE CHAPTER 11 CASE**

18. The Debtor filed under Subchapter V to address uncertainties arising from a disputed and contingent litigation judgment entered in *Blumberg v. Stroma Medical Corporation*, a California action initiated in 2020 by a former consultant and minor noteholder.

19. The judgment includes approximately $1.46 million, of which approximately $1.17 million (approximately 80%) consists of punitive damages. This claim materially distorts the Debtor's financial posture absent protection under the Bankruptcy Code.

20. The Debtor disputes liability, disputes the punitive damages as constitutionally excessive, and has filed a petition for writ of certiorari to the United States Supreme Court.

21. Post-judgment, Stratford Insurance Company (AIG), the Debtor's insurance carrier for its Directors and Officers policy, has disputed full coverage under the Debtor's D&O policy. Mediation under the policy is scheduled for December 19, 2025.

22. The Debtor filed this case to preserve operating capital, continue development milestones, and ensure a stable runway for commercial preparation.

**III.    FIRST DAY MOTIONS, PLAN AND PLAN-RELATED DOCUMENTS**

23. Concurrently with the filing of its chapter 11 petition, the Debtor has filed a number of motions identified herein requesting "first day" relief (the "First Day Motions") that the Debtor believes are necessary to enable it to maximize the value of its estate while the Chapter 11 Case is pending.

24. The facts set forth in the First Day Motions are incorporated herein in their entirety. The Debtor requests that the Court grant the First Day Motions as critical elements in ensuring a smooth and orderly administration of the Debtor's estate during the pendency of this Chapter 11 Case.

25. I have reviewed each of the First Day Motions, and the facts set forth in each First Day Motion are true and correct to the best of my knowledge, information, and belief with appropriate reliance on the Debtor's personnel and advisors. To this end, the Debtor has filed the following First Day Motions:

    i. *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing (A) Continued Use of Its Existing Cash Management System, (B) Maintain Exiting Bank Accounts, and (C) Use of Its Existing Business Forms, (II) Scheduling a Final Hearing and (III) Granting Related Relief;*

    ii. *Debtor's Motion for Entry of Interim and Final Orders Authorizing Debtor to (I) Pay Prepetition Wages, Salaries, Withholding Obligations, and Other Compensation and Benefits, (II) Maintain Employee Benefit Programs, (III) Pay Related Administrative Obligations, and (IV) Granting Related Relief;*

    iii. *Debtor's Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Discontinuing, Altering, or Refusing Service, (II) Deeming Utility Providers to Have Adequate Assurance of Payment, (III) Establishing Procedures for Resolving Requests for Additional Assurance, and (IV) Granting Related Relief;*

    iv. *Debtor's Motion for Entry of Interim and Final Orders Authorizing the Debtor to (I) Maintain, Continue, and Renew Its Property, Liability, and Other Insurance Policies and Agreements and (II) Honor All Obligations in Respect Thereof;*

    v. *Debtor's Motion for Entry of Interim and Final Orders, Pursuant to Bankruptcy Code Sections 105(a), 363(b), 503(b), 1107(a), and 1108, (I) Authorizing The Debtor to Pay Critical Vendor Claim of StarFish Product Engineering Inc.; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief;*

    vi. *Debtor's Motion for Entry or Interim and Final Orders Authorizing the Debtor to Redact Certain Personal Information; and*

    vii. *Debtor's Motion for (I) Entry of an Order Scheduling a Confirmation Hearing; (II) Establishing Plan Objection Deadlines and Related Procedures; (III) Approving Solicitation Procedures and Form of Ballot; (IV) Directing that a Meeting of Creditors Not be Convened; (V) Waiving Rule 2015.3 Reports; (VI) Waiving the Requirement of Filing Schedules of Asses and Liabilities and Statement of Financial Affairs; (VII) Waiving the Requirement of Filing Status Report and Directing a Status Conference Not be Held; (VIII) Setting the Bar Date; and (IX) Granting Related Relief.*

    26.     It is my belief that the relief sought in each of the First Day Motions is necessary for a successful reorganization and to maximize Creditor and Equity Interests recoveries. The

relief requested in the First Day Motions is a critical component of the confidence of key constituencies necessary to implement a successful chapter 11 process.

27. Given the pre-packaged nature of this Chapter 11 Case, the First Day Motions are critical to ensuring a cost-efficient administration of the Debtor's Assets.

28. Finally, the Debtor also filed the *Debtor's Prepackaged Subchapter V Plan of Reorganization* (the "Plan"), which sets forth in detail the treatment of the Professional Fee Claims, Priority Tax Claims, Disputed, Contingent Litigation Claim, General Unsecured Claims, and Equity Interests. The following chart sets forth the proposed treatment as contemplated in the Plan:

| | |
|---|---|
| **Administrative Expense Claims and Professional Fees** | Allowed Professional Fee Claims that are due and owing as of the Confirmation Date shall be paid one hundred percent (100%) in Cash, from the Professional Fee Escrow Account. Further, each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final fee application on or before the Professional Fee Bar Date. A Professional Fee Claim with respect to which a fee application has been properly and timely filed pursuant to this Article 2 shall be paid only to the extent Allowed by Final Order. Any objections to Professional Fee Claims shall be Filed and served no later than twenty-one (21) days after the filing of the final fee application for the for allowance and payment of Professional Fee Claims. Once all Professional Fee Claims have been considered and Allowed by the Bankruptcy Court, the Debtor shall pay, after the application of any retainer amounts held by such Professional, such Allowed Professional Fee Claims as soon as practicable from the Professional Fee Escrow Account.<br><br>The Subchapter V Trustee shall be paid all fees due and owing as of the Confirmation Date and shall be paid one hundred percent (100%) in Cash, from the Professional Fee Escrow. |
| **Priority Tax Claims** | Payment through the Plan from the Debtor's Assets in full on the Effective Date. |

| | |
|---|---|
| **Contingent, Disputed Litigation Claim** | Payment of undisputed amount through the Plan in full in Cash on the Effective Date. |
| **General Unsecured Claims** | Payment of seventy-five percent (75%), in Cash, on the Effective Date<br><br>Estimated Recovery Percentage: 75% |
| **Equity Interests** | Holders of Equity Interests will retain their ownership interests in the Debtor |

## CONCLUSION

29.    I believe approval of the relief requested in the First Day Motions and the Other Motions are in the best interests of all stakeholders and respectfully request that the Court grant all related relief in the First Day Motions and Other Motions (in due course) and such other further relief as may be just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: December 8, 2025
        Laguna Beach, California                  */s/ Gregg Homer*
                                                           Gregg Homer
                                                           Executive Chairman