## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>STROMA MEDICAL CORPORATION.,<br><br>Debtor. [1] | Chapter 11<br>Subchapter V<br><br>Case No. 25-12169 (JKS) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Stroma Medical Corporation, debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, hereby moves (the "Motion") the United States Bankruptcy Court for the District of Delaware (the "Court") for entry of interim and final orders pursuant to sections 105(a), 363, 507, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtor to pay and honor certain prepetition wages, benefits, and other compensation obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition wages and benefits; and (iii) granting related relief. In addition, the Debtor is seeking to schedule a final hearing (the "Final Hearing") on the Motion. In support of this Motion, the Debtor incorporates by reference the

---

[1] The Debtor in this Subchapter V Case, along with the last four digits of its federal tax identification number is as follows: Stroma Medical Corporation (8755). The Debtor's mailing address is 30 Hughes, Suite 206, Irvine, California 92618.

*Declaration of Gregg Homer in Support of Petition and First Day Relief* (the "<u>First Day Declaration</u>")[2] filed contemporaneously herewith and respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363, 507, and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h), and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

3. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4. On December 8, 2025 (the "<u>Petition Date</u>"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>") as a debtor defined in Bankruptcy Code section 1182(1), and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5. No official committee has been appointed in this Chapter 11 Case. The Debtor is operating its business as a debtor in possession pursuant to Bankruptcy Code section 1184.

6. Additional details regarding the Debtor, its business, the events leading to commencement of this Chapter 11 Case, and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration, which is incorporated herein by reference.

## EMPLOYEE COMPENSTION AND OBLIGATIONS[3]

**I.    The Debtor's Workforce**

7. As of the Petition Date, the Debtor's workforce consists of seven (7) active employees, four (4) of which are full-time, W-2 employees (two of which are also officers and members of the Debtor) and three (3) of which are part-time (collectively, the "Employees"). None of the employees are unionized or party to collective bargaining agreements or similar labor arrangements.

8. The Debtor's Employees possess the institutional knowledge, experience, and skills necessary to support the Debtor's business operations during this Chapter 11 Case. In addition to the employees' compensation, the Debtor also incurs other obligations for employee programs, such as paid personal time off ("PTO"), federal and state withholding taxes and other withheld amounts, health and welfare benefits, expense reimbursements, and programs that the Debtor historically has provided in the ordinary course of business. The programs provided by the Debtor

---

[3] The description of employee compensation, obligations, benefits, and programs described herein are for summary purposes only and are qualified in their entirety by the applicable documents and/or agreements governing such compensation, obligations, benefits, and programs. In the event of any inconsistency, the applicable documents and/or agreements governing such compensation, obligations, benefits, and programs control. Moreover, the Debtor has summarized its "Employee Programs" and "Employee Obligations" in this Motion. However, to the extent that any "Employee Programs" and "Employee Obligations" have been inadvertently omitted from the summary, the Debtor requests that the interim order and final order granting the relief sought herein apply to any and all of the Debtor's employee programs and employee obligations provided to its Employees.

to its Employees, as more fully described below, are referred to herein as the "<u>Employee Programs</u>," and the obligations to the Employees thereunder are referred to herein as the "<u>Employee Obligations</u>."[4]

9. The Debtor also retains approximately eighteen (18) independent contractors (the "<u>Independent Contractors</u>"). These Independent Contractors are not paid through the Debtor's payroll system, and the Debtor is not seeking any relief with respect to those contractors. The Independent Contractors provide regulatory, clinical, manufacturing, design, and other related services. Like the Employees, services of the Independent Contractors are necessary to the operations of the Debtor's business.

**II.      Employee Programs and Employee Obligations**

   **A.      Employee Wages**

10. The Debtor pays its employees twice a month on the 15th and last day of each month. The most recent payroll was received by employees on November 28, 2025. On average, the Debtor pays approximately $119,600 per pay period in base wages for current employees. As of the Petition Date, the Debtor believes that approximately $54,362.22 in wages and salaries to employees will be owed as of the Petition Date. The Debtor seeks authority to pay wages and salaries amounts that accrued prior to the Petition Date to its Employees up to the applicable cap set forth in Bankruptcy Code section 507.

11. Additionally, the Debtor seeks authority to continue to pay wages that become due to all Employees after the Petition Date in the ordinary course of business. To maintain the morale

---

[4] For each in summarizing the Debtor's payment obligations, the definition of Employee Obligations includes Independent Contractor Obligations (as defined below) despite the fact that the Independent Contractors are not employees of the Debtor.

4

and dedication of its current employees, the Debtor believes it is important to demonstrate its ongoing commitment to its Employees by continue to honor employee wages without interruption.

**B.      Independent Contractor Wages**

12.    The Debtor pays the Independent Contractors' compensation directly (the "Independent Contractor Obligations").  As of the Petition Date, the Debtor is current on its Independent Contractor Obligations.  However, out of an abundance of caution, the Debtor seeks authority, but not direction, to honor all Independent Contractor Obligations that arose prepetition and that become due in the ordinary course of business postpetition.

**C.      Accrued Paid Personal Time (PTO)**

13.    In the ordinary course of business, the Debtor provides eligible employees with PTO.

14.    The PTO benefit starts immediately upon employment.  Part-time employees, temporary employees, interns, and Independent Contractors are not eligible to accrue vacation or other forms of time off.  Full-time exempt and non-exempt employees accrue PTO on the following annual basis during the duration of full-time employment: for employees with five (5) years or less of service, 120 hours, up to a cap of 180 hours; for employees with six (6) years or more of service, 160 hours, up to a cap of 240 hours.  Accrued hours roll over each year until the cap is reached. Employees do not accrue any additional hours once the cap has been reached until they take the paid time off, lowering the balance below the CAP.

15.    The Debtor does not pay out unused PTO to current employees.  The Debtor does pay out unused PTO to employees who have terminated employment and have an unused balance of PTO.

16. The Debtor seeks authority to continue its existing PTO policy in the ordinary course of business on a postpetition basis.

17. As of the Petition Date, the Debtor does not owe any amounts for accrued PTO. However, the Debtor requests authority that they be authorized to continue to honor all prepetition and postpetition accrued PTO as it comes due in the ordinary course.

     **E.**     **Payroll Taxes and Withholding Obligations**

18. Each pay period, the Debtor deducts certain amounts directly from employees' pay, including but not limited to, pre- and after-tax deductions payable pursuant to certain of the Employee Obligations, legal-ordered deductions, and other miscellaneous deductions (collectively, the "Deductions").

19. Based upon the employees' salaries and wages, the Debtor also is required by law to withhold amounts related to federal, state, and local income taxes, as well as Social Security and Medicare, and to remit such withholdings to the applicable authorities. The Debtor is additionally required to make matching payments from its own funds for Social Security and Medicare and to pay, based on a percentage of gross payroll, state and federal unemployment insurance, employment training taxes, and state disability insurance contributions (all of the foregoing, collectively, the "Payroll Tax Obligations"). For each pay cycle, the Debtor withholds applicable Payroll Tax Obligations from employees' wages and remits such amounts to the applicable authorities.

20. As of the Petition Date, all Deductions and Payroll Tax Obligations (collectively, the "Withholding Obligations") required to be remitted to the appropriate third-party recipients have been or are in the process of being paid. The Debtor seeks authorization, but not direction,

to pay and remit any further Withholding Obligations that arise in the ordinary course of business postpetition to the appropriate authorities, consistent with the Debtor's prepetition practices.

**E.     Health Benefits**

21.     The Debtor provides eligible full-time Employees with medical benefits plans, including, without limitation, medical, dental, and vision coverage (the "Health Plans") through Beyond Benefits Trust Anthem (the "Health Benefit Provider").  Eligible Employees have the choice of seven (7) medical plans.  The Debtor contributes 100% of the monthly premiums on the Employees' behalf for the Health Plans.  Historically, the Debtor has spent approximately $4,349 per month on account of the Health Plans.  As of the Petition Date, all premiums for the Health Plans have been paid, and the next premium amount will be paid on or about January 1, 2026.

**F.     Workers' Compensation Program**

22.     Under applicable law, the Debtor is required to maintain a workers' compensation insurance program to cover employees' workers' compensation claims arising from or related to their employment with the Debtor (the "Workers' Compensation Program"), and to satisfy the Debtor's obligations arising under or related to the Workers' Compensation Program (the "Workers' Compensation Obligations").

23.     The Debtor's insurance obligations related to the Workers' Compensation Program and the Workers' Compensation Obligations is addressed in *Debtor's Motion For Entry of Interim and Final Orders (I) Authorizing the Debtor To (A) Continue Insurance Policies and Agreements Relating Thereto Entered Into Prepetition and Pay Prepetition Obligations in Respect Thereof, (B) Renew, Revise, Extend, Supplement, Change or Enter Into New Insurance Coverage as Needed in Its Business Judgment, (C) Honor Prepetition Premium Financing Agreements, (D) Renew and Enter Into New Insurance Premium Financing Agreements in the Ordinary Course of Business,*

*(E) Maintain Bonds, and (F) Continue To Pay Broker Fees; (II) Authorizing Banks To Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief* filed contemporaneously with this Motion. The Debtor does not have any additional obligations outside of paying premiums for the insurance.

### G. Bonuses

24. The Debtor, in management's sole discretion, may provide annual bonuses to employees. The discretionary bonuses depend on the Debtor's annual financial performance and productivity. Pursuant to this Motion, the Debtor seeks authority to continue discretionary bonuses. For the avoidance of doubt, this Motion does not seek to continue any incentive plans with respect to insiders, which may be addressed in a subsequent motion to be filed with the Court.[5]

### H. Miscellaneous Benefits

25. The Debtor also may offer other miscellaneous benefits to eligible Employees including, without limitation, paid holidays, parental leave, and expense reimbursements. The Debtor believes that continuing to honor these miscellaneous benefits will help boost employee morale and confidence in the Debtor's business plan and maintain the current workforce. The obligations owed to the employees with respect to any miscellaneous benefits will be de minimis, and the Debtor requests authority to continue to honor miscellaneous benefits in the ordinary course.

### I. Payroll Processing

26. The Debtor pays approximately $ 170 per month for such payroll processing of Employer Taxes and Deductions related services provided by ADP (the "Payroll Processing Expenses"). Each pay period, ADP automatically: deducts from the Debtor's account the cost of

---

[5] The Debtor reserves the right to seek, through a separate motion, approval of incentive plans with respect to insiders that are consistent with Bankruptcy Code section 503(c).

its services; and either deducts from the Debtor's account the funds necessary to cover payroll or instructs the Debtor's bank to issue the payroll funds directly to the Employees. As of the Petition Date, the Debtor has no outstanding payments due to ADP for its services. By this Motion, the Debtor seeks authority to continue using the Payroll Processing Expenses in the ordinary course of business during this Chapter 11 Case.

## RELIEF REQUESTED

27. By this Motion, the Debtor requests entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively: (i) authorizing the Debtor to pay and honor the Employee Obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition Employee Obligations; and (iii) granting related relief.

**I.     Authority to Pay Employee Obligations and Continue Employee Programs is Warranted**

28. The Debtor's business depends upon reliable and loyal employees. Honoring the Employee Obligations and Employee Programs is essential to ensure such reliability and loyalty. Failing to promptly honor such obligations will create doubt and concern among the employees and could lead to a significant loss of employees. Such loss of employees at this critical time would immediately and irreparably harm the Debtor's ability to maintain operations to the detriment of all parties in interest.

29. Therefore, the Debtor seeks the relief in this Motion on several bases under the Bankruptcy Code. First, certain of the prepetition obligations are entitled to priority under Bankruptcy Code section 507. Second, the Debtor is required to pay and remit certain Withholding Obligations under Bankruptcy Code section 541 as these amounts are not property of the estate. Third, the Debtor may honor and pay Employee Obligations in the ordinary course of business

9

Bankruptcy Code section 363. Finally, honoring the Employee Obligations is a sound exercise of the Debtor's business judgment and permissible under the "doctrine of necessity."

      **A.**    **Certain of the Employee Obligations are Entitled to Priority Treatment Under Bankruptcy Code Section 507**

30.    Pursuant to Bankruptcy Code sections 507(a)(4) and (5), certain of the unpaid prepetition Employee Obligations—including unpaid wages—are entitled to priority treatment in an amount up to $17,150 for each individual. To the extent that such claims are afforded priority status, the Debtor must pay these claims in full prior to payment of general unsecured creditors under a plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $17,150.00 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C. § 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

31.    Accordingly, granting the relief sought with respect to Employee Obligations will affect only the timing of payments to Employees, and will not have any material negative impact on recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of unpaid Employee Obligations will enhance value for the benefit of all stakeholders because it will help ensure that the employees—the lifeblood of the Debtor's business operations—will continue to provide vital services to the Debtor at this critical juncture and will preserve the value of the Debtor's estate. In addition, to the extent that the Debtor is authorized, in a reasonable exercise of

its business judgment, to pay prepetition Employee Obligations on a postpetition basis in the ordinary course of business, such payments will enhance the value of the Debtor's estate by preserving the value of the Debtor's business for all stakeholders.

      **B.**      **Payment of Certain Employee Obligations Is Required by Law Under Bankruptcy Code Section 541**

      32.      The Debtor also seeks authority to pay Withholding Obligations to the appropriate entities in the ordinary course. These amounts principally represent amounts that employees, governments, and judicial authorities have designated for withholding from employees' paychecks. These withholdings include child support and alimony payments, which are not considered property of the Debtor's estate because the Debtor has withheld such amounts from employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(7) and (d).

      33.      Similarly, applicable U.S. federal and state laws require the Debtor to withhold federal, state, and local income taxes from employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–96 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes). These Withholding Obligations are also not property of the Debtor's estate and, accordingly, the Debtor requests that the Court authorize them to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

      **C.**      **The Debtor May Honor and Pay Employee Obligations in the Ordinary Course of Business Pursuant to Bankruptcy Code Section 363**

      34.      The Debtor's ability to compensate current employees in the ordinary course of business is necessary to the Debtor's success in this Chapter 11 Case and is consistent with section 363(c) of the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business

of the debtor is authorized to be operated under [section 1008 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing"); 11 U.S.C. § 1184 (providing that a debtor in possession, as trustee, may operate the debtor's business). As such, the Debtor believes sufficient cause exists to pay Employee Obligations in the ordinary course on a postpetition basis.

        **D.    Payment of the Employee Obligations Is a Sound Exercise of the Debtor's Business Judgment**

35. Courts in this jurisdiction and others generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain prepetition claims). When authorizing such payments, courts have relied upon several legal theories rooted in Bankruptcy Code sections 1184, 363(b), and 105(a).

36. "Section 1184 makes plain that a debtor in possession in a subchapter V case is required to "perform [the] function and duties . . . of a trustee serving in a case under this chapter." In addition to the fiduciary duties imposed by state law, it is implicit in the term "trustee," which

is drawn from the common law of trusts, that these duties include managing the debtor's business as a fiduciary to the estate and its stakeholders." *In re Comedymx, LLC*, 647 B.R. 457, 465 (Bankr. D. Del. 2022). Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Indeed, the *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." Id. Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages).

37. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code section 105(a). This section, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of services essential to the debtors' business reorganization plan. *See Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

13

38. In addition to the authority granted a debtor in possession under Bankruptcy Code sections 1184, 363(b), and 105(a), courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 310 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization. *See, e.g., Lehigh & New England Ry. Co.*, 657 F.2d at 581–82.

39. Today, the rationale for the necessity of payment rule—the preservation of a business in chapter 11 cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); 2 Collier on Bankruptcy ¶ 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (discussing cases in which courts have relied upon the doctrine of necessity or the necessity of payment rule to pay prepetition claims immediately).

40. The relief requested herein will benefit the Debtor's estate and creditors by allowing the Debtor's business operations to continue without interruption. In the absence of such payments, the Debtor believes that its employees may immediately seek alternative employment opportunities and will cease providing services to the Debtor. Such a development would have a devastating impact on the Debtor's business, deplete the Debtor's workforce, and diminish confidence in the Debtor. Moreover, the loss of valuable individuals and the recruiting efforts that would be required to replace any essential employees would be a massive and costly distraction at a time when the Debtor should be focusing on this Chapter 11 Case.

**II.    Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers**

41. The Debtor represents that it has sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves and expected cash flows from ongoing business operations. Also, under the Debtor's existing cash management system, the Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment made with respect to the Employee Obligations. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks should be authorized and directed, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the Employee Obligations.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

42. In order for a debtor to obtain relief to make payments within twenty-one (21) days of the petition date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely, absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, No. 08-12412, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for postpetition financing, adequate protection, and modification of the stay where the court found that the relief was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' businesses); *In re New World Pasta Co.*, No. 04-02817, 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (same); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens ability to reorganize).

43.     Here, immediate and irreparable harm would result if the relief requested herein is not granted.  As discussed above, the Debtor's employees are integral to the Debtor's operations. Failing to satisfy obligations to them in the ordinary course of business will jeopardize loyalty and trust, possibly diminishing the Debtor's workforce and thereby severely disrupting the Debtor's operations.  It is imperative that the Debtor maintain the value of the business while the Debtor is contemplating and formulating its plan of reorganization.  Moreover, the Debtor's employees rely on the Debtor's timely payment of their compensation and provision of benefits for their livelihood.  Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 for the prepetition amount of Employee Obligations that the Debtor seeks authority to pay pursuant to the Interim Order.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

44.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a) and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## DEBTOR'S RESERVATION OF RIGHTS

45.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the proposed interim order and the proposed final order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of any of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a

concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

46.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Subchapter V trustee appointed in this Chapter 11 Case (the "Subchapter V Trustee"); (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Delaware Secretary of State; (vi) the Delaware Secretary of the Treasury; (vii) each of the Debtor's twenty (20) largest unsecured creditors; (viii) the Employees; (ix) the Independent Contractors; (x) the Health Benefit Provider; and (xi) all parties requesting notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

47.     The Debtor has not previously sought the relief requested herein from this Court or any other court.

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the proposed Interim Order substantially in the form annexed hereto as Exhibit A granting the relief requested in the Motion and such other and further relief as may be just and

proper, and (b) schedule a Final Hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the proposed Final Order substantially in the form annexed hereto as Exhibit B.

Dated: December 8, 2025

**ROBINSON & COLE LLP**

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson, Esq. (No. 4247)
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile:  (302) 516-1699
Email: jedmonson@rc.com

*Proposed Counsel for the Debtor and Debtor-in-Possession*