**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>STROMA MEDICAL CORPORATION,<br><br>Debtor. | Chapter 11<br>Subchapter V<br><br>Case No. 25-12169(JKS)<br><br>**Hearing Date: August 6, 2026 at 1:00 p.m. (E.T.)**<br>**Objections Due: June 30, 2026 at 4:00p.m. (E.T.)** |

**MOTION OF SAMUEL BLUMBERG FOR ENTRY OF AN ORDER DISMISSING THE**
**CHAPTER 11 CASE FOR CAUSE PURSUANT TO 11 U.S.C. § 1112**

Judgment creditor Samuel Blumberg ("Mr. Blumberg") hereby files this Motion (this "Motion") for Entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), dismissing the Chapter 11 Case for cause pursuant to 11 U.S.C. § 1112.  In support of this Motion, Mr. Blumberg incorporates the *Declaration of Zhao Liu* ("Liu Declaration") contemporaneously filed herewith and respectfully states as follows:

**I.**

**PRELIMINARY STATEMENT[1]**

1.      This small Subchapter V case has now lingered under the protections of Chapter 11 for over half a year.  The Debtor stated unequivocally that it filed this Subchapter V case to pay creditors their fair share.  This case was never about the creditors.   The Debtor had $4.2 million of cash on hand to pay all creditors in full at the outset of the case. The Debtor now only holds approximately $830,000 in cash, and yet, we are no closer today to distribution to creditors than we were on the Petition Date.

2.      It must be reminded that the Debtor has no historical or current revenue. Conversely, the cash held by the Debtor has diminished from $4,233,856.09 per the Debtor's schedules to $832,943.62 as of May 31, 2026, according to its monthly operating report for May 2026.  In the meantime, the Debtor has wasted this Court and the estate's time and resources by racking up $555,053.57 in administrative expenses, and now having fired its former Chapter 11

---

[1] Capitalized terms used but not immediately defined shall have the meanings ascribed to them below.

counsel, Robinson & Cole LLP, Debtor now seeks to start anew with new counsel.  Mr. Blumberg never asked to be entangled in this bankruptcy case, and he sees no reason for the Debtor to be in chapter 11, and certainly, not deserving of the protections of Subchapter V when it contravenes the Congressional intent of "a streamlined, lower-cost, and more effective reorganization." After over six months of being led astray, seven failed plans of reorganization, multiple filed and withdrawn meritless motions, and $555,053.57 (and growing) of professional fees wasted, it is time for the charade to end.

3.	From the start, the Chapter 11 Case was filed to target and disparately treat the very final judgment that was upheld on multiple levels of appeal.  Indeed, Mr. Blumberg is Debtor's sole meaningful creditor.  As established at the confirmation hearing, all other general unsecured claims total only approximately $382,000, the vast majority of which is owed to StarFish Product Engineering ("StarFish"), a friendly and passive creditor already receiving payments under critical vendor orders and a post-petition accommodation agreement, with the remaining trade vendor claims totaling only approximately $27,982.77.[2]  This is a quintessential two-party dispute that the Bankruptcy Code was not intended to be used to adjudicate.  This Chapter 11 Case was therefore not filed in good faith and must be dismissed.  The Trustee has been left with no choice but to file this Motion.

4.	Out of the haze of the Debtor's various motions and plans, what is evident after this beyond-half-year morass, the party who has benefited most is the Debtor's principal, Gregg Homer, who testified before this Court on plan confirmation and failed to provide meaningful explanation for the Debtor's prospect for reorganization, its questionable financial projections as well as liquidation analysis, and chapter 11 filing for the benefit of creditors.  Meanwhile, as reflected in the Debtor's monthly operating reports from December 2025 through May 2026, Mr. Homer has been paid no less than $188,333.37 in payroll alone since the commencement of this case.  The fact that the Debtor has twice sought (and withdrawn once) a motion to impose stay as

---

[2] *See* Hr'g Tr. 56:8-23, Mar. 27, 2026.

4916-7970-3476, v. 3

to Mr. Homer is the very indication of that.

5.      The Debtor in this small, inactive Subchapter V case has had more than sufficient time to "reorganize"[3] in Subchapter V.  Subchapter V contemplates a strict 90-day process for the Debtor to propose a plan that has a "**realistic possibility** of being confirmed." § 1190 (**emphasis added**). The Debtor has had more than twice the amount of time Congress intended and proposed *five* plans plus two additional modifications thereto.  The last plan had ***no*** possibility of being confirmed, was opposed by Mr. Blumberg, the UST and the Subchapter V Trustee, and confirmation predictably and appropriately was denied.

6.      In addition to the failed plans, the Debtor has engaged in a pattern of filing and then withdrawing motions targeting Mr. Blumberg's claim.  The Debtor filed, and then withdrew, a motion to estimate Mr. Blumberg's claim.  It filed a substantive objection to Mr. Blumberg's claim seeking, among other things, to subordinate his punitive damages award and then withdrew it one day before Mr. Blumberg's opposition was due.  It filed, and then withdrew, a second motion to extend the automatic stay to non-debtor Mr. Homer.  Each of these filings was designed to burden Mr. Blumberg with the cost of litigation while advancing no legitimate estate purpose.

7.      For all of the reasons set forth herein, the totality of the circumstances compels the conclusion that cause exists under Section 1112(b) of the Bankruptcy Code to dismiss this Chapter 11 Case.  The Debtor has no revenue, no viable path to reorganization under the Subchapter V standard, no pressure from any creditor other than Mr. Blumberg, and has exploited this proceeding solely to delay satisfaction of a fully adjudicated judgment while depleting the estate's dwindling cash reserves.  Mr. Blumberg respectfully requests that this Court put an end to this abuse by entering an order dismissing the Chapter 11 Case for cause.

## II.

## JURISDICTION

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334

---

[3] The term "reorganize" is used broadly because the Debtor is pre-revenue; it has no source of income. Confirmation, therefore, is based entirely on speculation of future financial performance that has no historical or factual foundation.

4916-7970-3476, v. 3

and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "Amended Standing Order"). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9.    The statutory predicates for the relief sought herein are sections 105(a), 362, and 1112(b) of the Bankruptcy Code and Bankruptcy Rules 1017(a) and 4001.

**III.**

**BACKGROUND**

A.    **The Original Judgment Awarded Punitive Damages That the Appellate Court Affirmed in Full.**

10.    On November 4, 2020, Mr. Blumberg initiated the action in the Superior Court of California, County of Orange (the "Trial Court"), Case No. 30-2020-01172565, CU-BC-CJC, against Debtor, Mr. Homer, and Douglas Daniels, alleging, among other things, breach of contract, conversion, and fraud (the "State Court Litigation").    *See* Claim No. 4, Exhibit 1.

11.    Following a jury trial in January and February 2023, the jury returned a verdict finding (1) Debtor breached the notes; (2) Debtor breached the Consulting and Employment Agreements; and (3) Debtor and Mr. Homer converted Mr. Blumberg's shares.  *See* Claim No. 4.

12.    On March 6, 2023, the Trial Court then entered a judgment against Debtor and Mr. Homer (the "Original Judgment").  The Original Judgment awarded Mr. Blumberg: (1) $1,596,726 against Debtor, including $1,000,000 punitive damages; (2) $168,126.00 in punitive damages against Mr. Homer; and (3) $650,000 against Mr. Homer and Debtor for conversion, jointly and severally. *See* Claim No. 4, Exhibit 2.

13.    On March 14, 2023, Debtor and Mr. Homer then attacked the Original Judgment by filing a motion for a new trial and for judgment notwithstanding the verdict (the "JNOV").  The Trial Court denied the motion for a new trial but granted the JNOV motion on the conversion claim and the punitive damages award.  The Trial Court subsequently entered an amended judgment on June 8, 2023 (the "Amended Judgment") in favor of Mr. Blumberg:  $270,130.00 for the breach

4

of the convertible notes and $22,825.03 for breach of the agreements regarding stock options. Notably, the Amended Judgment does not contain explicit language vacating the Original Judgment.   *See* Claim No. 4, Exhibit 3.

14.    Mr. Blumberg timely appealed the Trial Court's order granting JNOV on the conversion claim to the Court of Appeal of the State of California, Fourth Appellate District, Division Three (the "Appellate Court").  Mr. Homer and Debtor also appealed the jury's award for damages on the conversion claim and award of punitive damages.  *See* Claim No. 4.

15.    On May 14, 2025, the Appellate Court issued an opinion including the following disposition:

> The judgment is affirmed in part, reversed in part, and remanded. The order granting the motion for JNOV on the conversion claim is reversed. The order denying the motion for JNOV on the breach of the Notes is affirmed. We find the jury's award of $650,000 on the conversion claim is not supported by the evidence and reverse. However, we remand for the trial court to amend the judgment to reflect that Blumberg is entitled to $270,130 as the fair market value of the Notes on either the conversion or the breach of contract claim. *The award of punitive damages of $1 million against Stroma and $168,126 against Homer are supported by the evidence and are not excessive and we affirm*. Blumberg shall recover costs on appeal

  *See* Claim No. 4, Exhibit 5. (emphasis added).

16.    On October 23, 2025, following the Appellate Court's directions and mandate, the Trial Court entered a Second Amended Judgment on Special Verdict (the "Second Amended Judgment"), which included the following pertinent details:

> Against Defendant Stroma Medical Corporation and in favor of Plaintiff Samuel Blumberg for punitive damages in the amount of $1,000,000;
>
> Against Defendant Homer and in favor of Plaintiff Samuel Blumberg for punitive damages in the amount of $168,126;

  *See* Claim No. 4, Exhibit 6.

**B.**    **The Debtor and Mr. Homer's Campaign of Delay Through Meritless Post-Judgment Appeals.**

17.    After Mr. Blumberg prevailed on appeal before the Appellate Court, Debtor and

4916-7970-3476, v. 3

Mr. Homer refused to accept the outcome of that fully and fairly litigated proceeding. They pursued an unwarranted escalation by first seeking review before the California Supreme Court, and then, following the California Supreme Court's denial, filing a petition for a writ of certiorari to the United States Supreme Court. This was, by any measure, an unremarkable commercial dispute involving no unsettled questions of federal or constitutional law, yet Debtor and Mr. Homer exhausted every available avenue to delay payment of a judgment they knew would ultimately stand.

18. While their certiorari petition remained pending before the United States Supreme Court, the Debtor commenced this Chapter 11 Case on December 8, 2025 (the "Petition Date") under Subchapter V of Title 11 designed to further delay satisfaction of Mr. Blumberg's judgment. As expected, on January 12, 2026, the United States Supreme Court denied the petition.

19. Even after the denial of certiorari, Debtor and Mr. Homer continued their campaign of delay. On February 6, 2026, Debtor and Mr. Homer filed a Petition for Rehearing (the "Rehearing Petition") with the United States Supreme Court, an extraordinary remedy reserved for cases presenting compelling reasons for reconsideration, and a remedy wholly inapposite to the straightforward commercial claims at issue here. On March 2, 2026, the United States Supreme Court denied the Rehearing Petition as well.

20. With that final denial, Debtor and Mr. Homer had exhausted every judicial remedy available to them, spanning three levels of the California court system and two separate applications to the United States Supreme Court, yet they still refused to satisfy the judgment.

C. **The Debtor's Failed and Withdrawn Attempts to Challenge the Debtor's Claim, Extend the Stay, and Seven Separate Attempts to Confirm a Plan.**

21. Over the course of more than six months since the Petition Date, the Debtor has engaged in a pattern of filing and withdrawing motions designed to impair Mr. Blumberg's rights while failing to advance this case toward any meaningful distribution to creditors.

22. Specifically, the Debtor has: (a) filed and subsequently withdrawn both a motion to estimate Mr. Blumberg's Claim and a substantive objection to his Claim; (b) obtained one

4916-7970-3476, v. 3

extension of the automatic stay to protect Mr. Homer from collection and then filed and withdrew a second motion to extend the stay; and (c) filed seven versions of its Chapter 11 plan, comprising the original plan, four subsequent amendments, and two modifications thereto, culminating in the Court's denial of confirmation on April 2, 2026.  Not one of these actions has advanced the case toward any meaningful distribution to creditors.

### a.   The Debtor's Challenges to Mr. Blumberg's Claim.

23.     On January 29, 2026, the Debtor filed a motion seeking to estimate the Blumberg Claim for bankruptcy purposes pursuant to 11 U.S.C. § 502(c) (the "Estimation Motion") [Dkt. No. 93].  Both Mr. Blumberg and the United States Trustee filed objections to the Estimation Motion [Dkt. Nos. 109, 111].  On March 27, 2026, at the outset of the confirmation hearing, the Debtor withdrew the Estimation Motion without prejudice [Dkt. No. 194].

24.     On March 8, 2026, the Debtor filed a substantive objection to Mr. Blumberg's Claim (the "Claim Objection") [Dkt. No. 140], seeking, among other things, to subordinate Mr. Blumberg's punitive damages claim.  The Claim Objection was filed just days before the then-scheduled confirmation hearing.  On April 6, 2026, one day before the deadline for Mr. Blumberg to file an opposition, the Debtor withdrew the Claim Objection without prejudice [Dkt. No. 202].

### b.   The Debtor's Motions to Extend the Automatic Stay to Mr. Homer.

25.     On January 20, 2026, the Debtor filed a motion seeking to extend the automatic stay to non-debtor Mr. Homer (the "First Stay Extension Motion") [Dkt. No. 78].  Mr. Blumberg timely objected to the First Stay Extension Motion on January 27, 2026 [Dkt. No. 85].  Following an evidentiary hearing, on March 18, 2026, the Court entered an order granting the First Stay Extension Motion, extending the automatic stay to Mr. Homer through the earlier of (i) the confirmation hearing then-scheduled for March 27, 2026, or (ii) April 8, 2026, without prejudice to any party seeking to extend or terminate the extension. [Dkt. No. 173].

26.     The confirmation hearing was held and concluded on March 27, 2026.  The stay expired on that date by operation of the Stay Order.  It has not been in effect since.

27.     On April 29, 2026, less than one month after the Court denied confirmation of the

7

plan, the Debtor filed a second motion seeking to renew and continue the extension of the automatic stay to non-debtor Mr. Homer through the plan effective date (the "Second Stay Extension Motion") [Dkt. No. 220]. Mr. Blumberg timely objected to the Second Stay Extension Motion on May 13, 2026 [Dkt. No. 224]. On May 29, 2026, the Debtor withdrew the Second Stay Extension Motion [Dkt. No. 228], making it the third motion the Debtor had filed and ultimately withdrawn in this case.

**c.   The Debtor's Seven Failed Attempts to Confirm a Plan of Reorganization.**

28.   The very next day after the Petition Date, on December 9, 2025, the Debtor filed its initial Subchapter V Plan of Reorganization [Dkt. No. 12]. Barely ten days later, on December 19, 2025, the Debtor filed an Amended Plan [Dkt. No. 35], followed just three days later by a Second Amended Plan on December 22, 2025 [Dkt. No. 37], which was modified on February 17, 2026 [Dkt. No. 116].

29.   On December 30, 2025, the Court entered a solicitation procedures order scheduling a confirmation hearing and related deadlines [Dkt. No. 51].

30.   The Debtor continued to amend its plan in an effort to obtain confirmation. On March 9, 2026, the Debtor filed a Third Amended Plan [Dkt. No. 142], which was modified on March 10, 2026 [Dkt. No. 150].

31.   The confirmation hearing, originally scheduled for February 24, 2026, was rescheduled first to March 6, 2026, then to March 12, 2026, and ultimately to March 27, 2026 [Dkt. Nos. 130, 136, 152]. On March 20, 2026, just one week before the rescheduled confirmation hearing, the Debtor filed a Fourth Amended Plan [Dkt. No. 177], bringing the original plan, four subsequent amendments, and two modifications to a total of seven failed attempts to confirm a plan of reorganization.

32.   At the confirmation hearing, Mr. Blumberg's counsel noted that throughout the case, the Debtor repeatedly filed its financial projections at the last minute before each scheduled

4916-7970-3476, v. 3

confirmation hearing.[4]  *See* Hr'g Tr. 169:10–170:15, Mar. 27, 2026.

33.     Following a five-hour evidentiary hearing on confirmation of the Fourth Amended Plan on March 27, 2026, on April 2, 2026, the Court issued its bench ruling denying confirmation of the Fourth Amended Plan (the "Confirmation Ruling") [Dkt. No. 201].  The Court found, among other things, that: (a) the plan's treatment of Class 2(b) did not satisfy the fair and equitable standard under Section 1191(c); (b) the plan's disposable income commitment was inadequate under Section 1191(c)(2)(a); (c) the plan was not feasible under Sections 1129(a)(11) and 1191(c)(3); (d) the financial projections were insufficient; and (e) the attempted subordination of punitive damages under Section 726(a)(4) fails as a matter of law because Section 726 does not apply in a Chapter 11 case. *See* Confirmation Ruling Tr. 19:20-20:6, Apr. 2, 2026.

34.     As of the date of this Motion, more than six months after the Petition Date, the Debtor has not filed any further amended plan.

**D.      The Monthly Operating Reports Show a Steep Decline in Cash and Insufficient Incoming Fees to Meet Operating Expenses.**

35.     The Debtor is a non-revenue, clinical-stage medical device company with no product sales, no historical revenue, and no current income from operations.

36.     At the confirmation hearing, Mr. Homer testified that Stroma has no income and no product sales, and that the company is a "pre-commercial company" and "pre-revenue company." *See* Hr'g Tr. 100:21–101:25, Mar. 27, 2026.  The Court found in its Confirmation Ruling that the company's financial projections demonstrate that it operates at a loss for four years with no revenue expected until year five. *See* Confirmation Ruling Tr. 7:14-20, Apr. 2, 2026.

37.     The Debtor's monthly operating reports ("MORs") filed with this Court paint a stark picture of the Debtor's deteriorating financial condition and its inability to sustain operations

---

[4] Counsel detailed that four days before the first scheduled confirmation hearing, the Debtor filed an amended plan supplement attaching financial projections for the first time; that three days before the rescheduled confirmation hearing, the Debtor filed a revised plan supplement with new financial projections; and that the Debtor showed Mr. Blumberg a new projection at approximately 11:00 a.m. on the day before the hearing, a projection that was never filed on the docket and that no other creditor in the case had the opportunity to review.  *See* Hr'g Tr. 169:10-170:15, Mar. 27, 2026.

without outside funding.  Since the Petition Date, the Debtor's cash reserves have steadily declined as the Debtor's monthly operating expenses have consistently exceeded any income received.  The Debtor has no mechanism to generate revenue to fund either its operations or distributions to creditors under any plan.

38.     As reported by the Debtor's first and latest MORs for December 2025 and May 2026, respectively, the cash reserves held in the Debtor's DIP accounts have diminished from the balance at filing of $4,233,856.09, to the reported balance of $832,93.62 as of the end of May 2026.   The Debtor's MORs show that for all months the Debtor's expenses/disbursements exceeded the Debtor's receipt of fees/recouped costs/income as follows:

|  | Receipts | Disbursements | Monthly Operating Cash Flow | Cash Balance at End of Month |
|---|---|---|---|---|
| December 2025[5] | $2,274.46 | $621,015.06 | ($618,740.60) | $3,615,115.49 |
| January 2026[6] | $2,908.29 | $553,333.03 | ($550,424.74) | $3,064,690.75 |
| February 2026[7] | $25,991.13 | $925,116.36 | ($899,125.23) | $2,165,565.52 |
| March 2026[8] | $467.74 | $802,460.32 | ($801,992.58) | $1,363,572.94 |
| April 2026[9] | $404.49 | $332,423.87 | ($332,019.38) | $1,031,553.50 |
| May 2026[10] | $123.31 | $198,733.21 | ($198,609.90) | $832,943.62 |

39.     The Debtor does not have the financial ability to operate without a loss in a chapter 11 case, nor can the Debtor project how future income can and will be used to pay creditors by way of a plan of reorganization.  Every month this case continues, the estate shrinks and creditors' prospects dim further.

---

[5] *See* Dkt. No. 82.
[6] *See* Dkt. No. 133.
[7] *See* Dkt. No. 186.
[8] *See* Dkt. No. 222.
[9] *See* Dkt. No. 230.
[10] *See* Dkt. No. 234.

4916-7970-3476, v. 3

**IV.**

**ARGUMENT**

A.   **Cause Exists for the Court to Dismiss the Bankruptcy Case.**

   a.   **Applicable Legal Standard**

40.   Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances and upon showing of cause, the court *shall* dismiss the chapter 11 case or convert a case under this chapter to a case under chapter 7, whichever is in the best interest of creditors and the estate. 11 U.S.C. § 1112(b)(1) (emphasis added).   Creditors have standing to move for dismissal of chapter 11 cases under Section 1112(b).   *In re Abijoe Realty Corp.*, 943 F.2d 121, 125 (1st Cir. 1991).   The initial burden lies with the movant to establish cause for dismissal or conversion.   *In re Labankoff*, 2010 WL 6259969, at *3 (9th Cir. BAP June 14, 2010) (quoting *In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008)).   Once movants have shown that cause exists to dismiss or convert the bankruptcy case, the court's discretion to refuse to dismiss or convert is limited.   *In re The SCO Group, Inc.*, 2009 WL 2425755, *5, n.7 (Bankr. D. Del. Aug. 5, 2009) ("Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause.'").

41.   The amendments to section 1112 thus limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause.   *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D.Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.");   *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D. S.C. 2007).

42.   "A lack of good faith constitutes 'cause,' though it does not fall into one of the examples specifically listed in the statute."   *In re LTL Management, LLC*, 64 F.4th 84, 100 (3d Cir. 2023).   "The determination of good faith is a fact-intensive inquiry in which the court must examine the totality of facts and circumstances."   *In re AIG Financial Products Corp.*, 651 B.R. 463, 473 (Bankr. D. Del. 2023) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999)).

11

4916-7970-3476, v. 3

To determine good faith, courts frequently look for evidence of the following factors:

(a) single asset case;

(b) few unsecured creditors;

(c) no ongoing business or employees;

(d) petition filed on eve of foreclosure;

(e) two party dispute which could be resolved in pending state court action;

(f) no cash or income;

(g) no pressure from non-moving creditors;

(h) previous bankruptcy petition;

(i) prepetition conduct was improper;

(j) no possibility of reorganization;

(k) debtor formed immediately prepetition;

(l) debtor filed solely to create automatic stay; and

(m) subjective intent of the debtor.

*In re Primestone Investment Partners, L.P.*, 272 B.R. 554, 557 (D. Del. 2002) (citations omitted). "The focus of the inquiry is whether the petition sought to achieve objectives outside the legitimate scope of the bankruptcy laws . . . [and] no single factor is determinative of a lack of good faith in filing a petition." *Id.* at 557–58 (finding that debtor filed petition in bad faith when it only had one meaningful asset which was subject to sole secured creditor's lien and debtor "was adequately protected by its bargained for contractual rights under state law [such] that it would be inappropriate to arm [it] with the powers of chapter 11 to disadvantage its sole secured creditor").

43.    "Courts routinely dismiss two-party disputes in chapter 11, characterizing them as having been filed in bad faith." *See, e.g. In re Traxcell Technologies, LLC*, 657 B.R. 453, 461 (Bankr. W.D. Tex. 2024) ("[T]he characterization of a case as a two-party dispute is given greater

4916-7970-3476, v. 3

weight relative to the other factors.  The existence of a two-party dispute can be independent grounds for dismissing a case.") (citations and quotations omitted).  "If a debtor faces no threat from any of its other purported creditors, its financial problems are a two-party dispute suitable for resolution which supports a finding of bad faith." *Matter of Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C.*, 651 B.R. 1, 10 (Bankr. S.D. Iowa 2023) (quoting *In re State Street Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003).

44.     As demonstrated below, the facts of this case satisfy a number of the *Primestone* factors, each of which independently supports a finding of bad faith and, taken together, make the case for dismissal overwhelming

### b. *Debtor Has No Cash or Income.*

45.     The Debtor is a non-revenue, clinical-stage medical device company with no product sales, no historical revenue, and no current income from operations.  Its cash reserves have plummeted from $4,233,856.09 at filing to a mere $832,943.62 as of May 31, 2026, with a staggering decline of over $3.4 million in approximately six months, with no end in sight.

46.     The Debtor's monthly operating reports confirm that its disbursements consistently and dramatically exceed its receipts, producing negative operating cash flow every single month since the Petition Date.  The Debtor is, in the most direct sense, burning through cash with no means of replenishing it.

47.     Mr. Homer himself conceded at the confirmation hearing that the Debtor would need a bridge loan merely to continue operations through the end of the year.  *See* Hr'g Tr. 117:4–120:18, Mar. 27, 2026.  But that bridge loan has not materialized, and even if it did, it cannot be used to pay creditors.  The Debtor simply has no means of funding distributions to creditors under any plan.

### c. *No Pressure from Other Creditors.*

48.     Mr. Blumberg is the Debtor's sole meaningful creditor; indeed, no committee of unsecured creditors has even been appointed given it is a Subchapter V case, and there is no activity, much less pressure, from any creditor besides Mr. Blumberg.  In fact, given that the

4916-7970-3476, v. 3

Debtor sought and was granted authority to pay critical vendor claims, it is currently unclear whether any unsecured creditors actually even exist as of this time, including StarFish.   In any event, it is undisputed that Mr. Blumberg is the only creditor who has taken any active role in this Chapter 11 Case, with no other creditors even having entered a notice of appearance thus far.

### d. No Prospect for Reorganization.

49. The Court's findings in the Confirmation Ruling demonstrate that there is no reasonable prospect for reorganization. The Court found that the two sources of potential recovery to pay Mr. Blumberg's Claim under the plan, including net operating income and insurance litigation, are "not feasible and are illusory." *See* Confirmation Ruling Tr. 12:22–13:12, Apr. 2, 2026. The Debtor's own financial projections demonstrate that the company will operate at a loss for four consecutive years, with no revenue expected until year five. *See* Confirmation Ruling Tr. 7:14-20, Apr. 2, 2026.

50. Indeed, the Court itself questioned at the confirmation hearing whether a Subchapter V plan can even be confirmed where there is no disposable income. The Court pressed the Debtor on "how the debtor gets around" the requirement that a Subchapter V debtor demonstrate that its plan is fair and equitable by committing projected disposable income to fund a plan for three to five years, observing that "there is no reference to disposable income in this plan." *See* Hr'g Tr. 158:7–25, Mar. 27, 2026.

51. The Debtor has conceded that it is a clinical-stage startup. *See Id*. It has not yet generated any revenue and lacks disposable income. This absence of disposable income reflects the Debtor's fundamental inability to satisfy a threshold requirement for nonconsensual confirmation of a Subchapter V plan.

52. Having failed to confirm a plan and with the Court having identified fundamental structural deficiencies in the Debtor's ability to satisfy the Bankruptcy Code's requirements, there is simply no reasonable prospect that any further amended plan will fare any better. Continued administration of this case is an exercise in futility.

4916-7970-3476, v. 3

*e.    Case Filed Solely for Automatic Stay.*

53.    The totality of the circumstances demonstrates that this Chapter 11 Case was filed primarily to invoke the automatic stay for the benefit of non-debtor Mr. Homer but not to reorganize the Debtor or to benefit its creditors.  On January 20, 2026, barely six weeks after the Petition Date, the Debtor filed the First Stay Extension Motion seeking to extend the automatic stay to Mr. Homer [Dkt. No. 78].  At the time, Debtor and Mr. Homer's petition for a writ of certiorari was still pending before the United States Supreme Court.  The Debtor thus used the bankruptcy filing as a shield to protect Mr. Homer from collection on the judgment while simultaneously pursuing a meritless petition to the Supreme Court, which was denied on January 12, 2026.  Even after that denial, the Debtor and Mr. Homer filed an extraordinary petition for rehearing which was also denied on March 2, 2026.

54.    After the stay expired at the conclusion of the confirmation hearing on March 27, 2026, the Debtor filed the Second Stay Extension Motion on April 29, 2026 [Dkt. No. 220], before withdrawing it yet again on May 29, 2026 [Dkt. No. 228].  This pursuit of stay protection for Mr. Homer demonstrates that the primary purpose of this filing was to deploy the automatic stay for Mr. Homer's personal benefit at the expense of Mr. Blumberg.

55.    These facts compel the conclusion that this bankruptcy filing was designed to deploy the automatic stay as a weapon against Mr. Blumberg, not as a shield for a legitimate reorganization.

56.    Chapter 11 cases filed on the eve of foreclosure are a hallmark of bad faith. *See, e.g., In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) (affirming dismissal because "suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis."). The fact that the Debtor filed this Chapter 11 Case, while its petition for certiorari to the United States Supreme Court was still pending and just weeks before that petition was denied on January 12, 2026, strongly implies the presence of bad faith.  The Debtor filed for bankruptcy precisely when it became clear that no judicial avenue remained to avoid satisfying Mr. Blumberg's judgment.

4916-7970-3476, v. 3

*f. Subjective Intent of the Debtor.*

57. Lastly, the subjective intent of the Debtor is clearly indicative of bad faith.

58. The Debtor's course of conduct since the Petition Date reveals a pattern of deliberate gamesmanship. The Debtor filed four amendments of its plan, plus two modifications thereto, each of which failed to satisfy the requirements of the Bankruptcy Code, culminating in the Court's denial of confirmation on April 2, 2026. The Debtor repeatedly filed critical financial projections at the last minute before each scheduled confirmation hearing, effectively denying creditors the opportunity for meaningful review. As the Court found, the Debtor's liquidation analysis contained pervasive inaccurate information, including inflated Chapter 7 administrative expenses without justification, misclassified priority wages, and the omission of millions of dollars in potential avoidance action recoveries. *See* Confirmation Ruling Tr. 13:13–16:6, Apr. 2, 2026.

59. The Debtor compounded this pattern by filing and withdrawing a claim objection, a claim estimation motion, and a second stay extension motion, each designed to impose the cost and burden of litigation on Mr. Blumberg while advancing no legitimate estate purpose. Throughout, Mr. Homer has been the driving force behind the Debtor's litigation strategy.

60. Taken together, the Debtor's subjective intent is clear: this Subchapter V case was filed for the sole purpose of impairing Mr. Blumberg's—and no other party's—claim. The Debtor has not even attempted to pretend that this case serves any valid reorganizational purpose. In short, there is no reason for this case to be in chapter 11.

61. Accordingly, "cause" exists within the meaning of Section 1112(b) to dismiss the Chapter 11 Case.

**B.    The Court Should Dismiss Rather than Convert the Chapter 11 Case.**

62. Conversion to Chapter 7 would also add additional fees and costs in the form of Chapter 7 trustee fees and related professional costs. After the payment of chapter 7 administrative claims, the Debtor's chapter 11 professionals (including the Subchapter V Trustee, former counsel Robinson & Cole LLP, and current counsel Bayard P.A.) would possess administrative claims that

would further diminish the estate.  More than $555,053.57 in administrative expenses have already been incurred during this Chapter 11 Case.  No benefit whatsoever would result from converting the case, and doing so would not be in the best interests of the creditors, Debtor, or the estate.  *See, e.g., 1121 Pier Village*, 635 B.R. at 141–42 (discussing factors and holding that dismissal better served interests to creditors where conversion would very likely only result in payments to secured creditor and unsecured claims were negligible); *Matter of NuGelt, Inc.*, 142 B.R. 661 (Bankr. D. Del. 1992) (finding that dismissal, not conversion, was warranted when case was "essentially a two-party dispute" between debtor and prepetition secured lender and unsecured were unquestionably out of the money and "the entire estate will go to the major secured creditor").

## V.

## CONCLUSION

63.    For all of the foregoing reasons, Mr. Blumberg respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A,** (i) dismissing the Chapter 11 Case for "cause" under Section 1112(b), and (ii) granting such other and further relief as the Court deems just and proper.

Dated: June 16, 2026
      Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Zhao Liu*
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Tel: (302) 777-1111
Email: rosner@teamrosner.com
      liu@teamrosner.com

-and-

**ARENTFOX SCHIFF LLP**
Christopher Kwan Shek Wong, Esq.
(admitted *pro hac vice*)
Ronghua (Sophia) Wang, Esq.

17

(admitted *pro hac vice*)
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
Telephone: 213.443.7512
E-mail: christopher.wong@afslaw.com
      Sophia.Wang@afslaw.com

*Counsel to Samuel Blumberg*

18

4916-7970-3476, v. 3